CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 1 2 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| FRANKIE ADAMS, ) | |
| ) | |
| Plaintiff, ) | Case No. 7:04CV00258 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| B.G. COMPTON, et al., ) | By: Hon. Glen E. Conrad |
| ) | United States District Judge |
| Defendants. ) | |

Frankie Adams, a federal inmate proceeding pro se, filed this civil rights action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). By order entered March 2, 2005, the case was referred to United States Magistrate Judge Michael F. Urbanski for appropriate proceedings pursuant to 28 U.S.C. § 636(b)(1)(B). This matter is presently before the court for review of the magistrate judge's Report and Recommendation, in which he recommends granting the motion for summary judgment filed by the defendants. The plaintiff has submitted a response to the magistrate judge's report. For the reasons set forth below, the Magistrate Judge's Report and Recommendation is adopted in its entirety. The defendants' motion for summary judgment shall be granted.

## BACKGROUND

The plaintiff is currently incarcerated at the United States Penitentiary in Coleman, Florida. The events pertaining to this action occurred while the plaintiff was incarcerated at the United States Penitentiary in Lee County, Virginia.

In his first claim, the plaintiff alleges that defendants Trees, Lopez, and Vialpando used excessive force against him on March 25, 2003. Specifically, the plaintiff alleges that he was

sprayed with pepper spray, punched, and kicked by the defendants, and that the defendants hogtied him and placed him in four-point restraints.

In his second claim, the plaintiff alleges that the defendants violated 28 C.F.R. § 552.23 when the plaintiff was sprayed with pepper spray. Section 552.23 provides as follows:

> Prior to any calculated use of force, the ranking custodial official (ordinarily the Captain or shift Lieutenant), a designated mental health professional, and others shall confer and gather pertinent information about the inmate and the immediate situation. Based on their assessment of that information, they shall identify a staff member to attempt to obtain the inmate's voluntary cooperation and, using the knowledge they have gained about the inmate and the incident, determine if use of force is necessary.

Id.

In his third claim, the plaintiff alleges that defendant Lopez violated his right to due process by filing a false disciplinary report against him, and that defendants White, Crum, Compton, Jones, Bondurant, Johnson, and Hatfield deprived him of a fair and impartial hearing by ignoring and destroying evidence that exonerated him. Specifically, the plaintiff contends that he was issued a false disciplinary report in an attempt to cover up the fact that prison guards had assaulted him. The plaintiff further contends a videotape that would have exonerated him was destroyed, and that defendant Crum found against him for personal reasons.

In his fourth claim, the plaintiff alleges that defendants Trees and Lopez were deliberately indifferent to his medical needs after he was sprayed with pepper spray. The plaintiff contends that when staff members flushed out his eyes after being sprayed, they did not document his injuries.

In his fifth claim, the plaintiff alleges that three defendants violated his rights under the Privacy Act, 5 U.S.C. § 552a, by placing false and inaccurate information in the plaintiff's file. The plaintiff contends that defendants Johnson and Hatfield falsified a report after the plaintiff

2

was assaulted by prison staff members, and that Dr. Lohman falsely described the plaintiff as a stalker in the plaintiff's psychological report.

In his final claim, the plaintiff alleges that defendants Trees, Lopez, and Vialpando violated the Torture Victim Protection Act of 1991, when they assaulted him. This Act establishes a cause of action against an individual who, under actual or apparent authority of any foreign nation, tortures or kills another. See Pub. L. 103-256, 106 Stat. 73.

On March 29, 2005, the defendants moved for summary judgment. The magistrate judge has issued a Report and Recommendation in which he recommends granting the defendants' motion. The parties were advised that they were entitled to file written objections to the report within ten days. The parties were further advised that failure to file specific objections would be deemed to constitute a waiver of the right to contest the magistrate judge's findings and conclusions. Before the ten-day period expired, the plaintiff mailed a response to the magistrate judge's report. At most, the plaintiff's response may be liberally construed as objections to the magistrate judge's report with regard to his excessive force and deliberate indifference claims.[1]

---

[1] In his response, the plaintiff alleges that after he was released from four-point restraints, the plaintiff noticed knots on his forehead. The plaintiff further alleges that Mrs. Mitchell, the registered nurse who treated him after the incident on March 25, 2003, did not document his injuries because she risked being fired. Citing to Byrd v. Clark, 783 F.2d 1002 (11th Cir. 1986) and Hudson v. McMillian, 503 U.S. 1 (1992), the plaintiff contends that a significant injury is not required to establish an Eighth Amendment claim.

The plaintiff's response also contains a motion for discovery. Because the requested discovery is not relevant to the issues in this case, the court will deny the motion. The court notes that the requested discovery relates to an affidavit from a correctional officer, Litzie Bishop, which was submitted with the defendants' motion for summary judgment. In the affidavit, Bishop explains that she was instructed to videotape the incident on March 25, 2003, and that on that date, her last name was Belcher. The plaintiff apparently misunderstands the affidavit. In his motion for discovery, the plaintiff seeks to obtain evidence that would prove "that a female C/O by the name of Mrs. Belcher" videotaped the incident, rather than "C/O Bishop."

## STANDARD OF REVIEW

The magistrate judge makes only a recommendation to this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The magistrate judge's report has no presumptive weight, and this court retains the responsibility to make a final determination. Id. at 270-271. The court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). As a result, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

With respect to the defendants' motion for summary judgment, such a motion shall be granted if there are no "genuine issues as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Industries, Inc., 763 F.2d 604, 610 (4th Cir. 1985).

## DISCUSSION

### 1. Plaintiff's Excessive Force Claim

To support his excessive force claim against defendants Trees, Lopez, and Vialpando, the plaintiff alleges that he is a Sunni Muslim, and that he attended prayer services with other Muslim inmates. During one of the prayer services, the plaintiff told another inmate that a prison guard was staring at him. The other inmate approached the guard and asked him if he had a problem.

As a result of this incident, the plaintiff was cited for inciting an inmate against a staff member. On March 25, 2003, the plaintiff was taken to an office, where he was asked to explain

4

what happened. When the plaintiff began recounting his version of the events, Trees told the plaintiff that he had heard enough. Trees subsequently radioed other staff members. After additional staff members arrived, the plaintiff was told that he was going to be placed in the special housing unit. The plaintiff alleges that when he again tried to explain the incident, he was sprayed with pepper spray by Lopez.

In an attempt to protect himself from the pepper spray, the plaintiff backed into a file room and held up a coffee pot. When the coffee pot failed to block the pepper spray, the plaintiff turned to the wall and placed his hands behind his back. The plaintiff was handcuffed and taken to the ground. At that point, the plaintiff alleges that at least four staff members kicked him while another staff member held the plaintiff in a choke hold. The plaintiff was then hogtied and taken to the special housing unit. Once in the special housing unit, the plaintiff's clothes were cut off and he was placed in four-point restraints. The plaintiff alleges that he suffered two knots on his forehead, and bruises on his head, neck, back, and sides.

In response to the plaintiff's allegations, the defendants have provided a different version of events. The defendants contend that when Trees informed the plaintiff that he would be moved to the special housing unit, the plaintiff rose abruptly, ripped off his uniform shirt, and began to challenge Trees and Lopez. When the plaintiff was ordered to submit to hand restraints, he became more hostile and ripped off his t-shirt. At that point, staff assistance was requested, and Lopez called for pepper spray.

Once additional staff members responded, Trees attempted to handcuff the plaintiff. The plaintiff subsequently lunged toward Trees. In an effort to subdue the plaintiff, Lopez disbursed a two-second burst of pepper spray, which struck the plaintiff's chest and neck. The plaintiff

then retreated to an adjacent file room, picked up a coffee pot filled with hot coffee, and held it in a manner that suggested that the plaintiff was planning to use it as a weapon. When the plaintiff refused to drop the coffee pot, Lopez disbursed another two-second burst of pepper spray. The plaintiff then dropped the pot, turned away from the staff members, and submitted to hand restraints.

Once in hand restraints, the plaintiff became combative and turned away from the staff members. Trees directed the other staff members to place the plaintiff in leg restraints. When the plaintiff was secured, the plaintiff was carried to the special housing unit. The defendants deny that the plaintiff was ever hogtied.

After the plaintiff was taken to the special housing unit, staff members notified prison health services that pepper spray was used on the plaintiff. Kim Mitchell, a registered nurse, examined the plaintiff and decontaminated his eyes, face, and neck with sterile saline. In an affidavit submitted with the defendants' motion for summary judgment, Mitchell alleges that she conducted a head-to-toe examination of the plaintiff, and that no injuries were found. Mitchell's findings were noted on an injury assessment form.

Following the examination, the plaintiff was placed in four-point, soft restraints. The restraints were applied without incident. The defendants contend that the plaintiff was not punched, kicked, or placed in a choke hold at any time.

The magistrate judge has recommended granting the defendants' motion for summary judgment with respect to the plaintiff's excessive force claim, on the basis that the plaintiff suffered only <u>de minimus</u> injuries. The plaintiff has objected to this recommendation. The plaintiff contends that significant injuries are not required to establish an Eighth Amendment

6

violation. Based on the plaintiff's objection, his excessive force claim must be reviewed de novo. See 28 U.S.C. § 636(b)(1)(B).

To establish an excessive force claim under the Eighth Amendment, an inmate must satisfy two elements: (1) that the prison official acted with a sufficiently culpable state of mind, and (2) that the harm inflicted on the inmate was sufficiently serious. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). With respect to the second element, an inmate "need not show that the force used caused an 'extreme deprivation' or 'serious' or 'significant' pain or injury to establish a cause of action." Id. (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). However, absent the most extraordinary circumstances, an inmate must provide proof of more than de minimis pain or injury. Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994).

In this case the plaintiff alleges that he suffered two knots on his forehead, and bruises on his head, neck, back, and sides. Even assuming that the plaintiff's allegations are true, the court agrees with the magistrate judge that the plaintiff has failed to allege facts indicating more than de minimus injuries. See Taylor v. McDuffie, 155 F.3d 479, 482 (4th Cir. 1998) (abrasions on the wrists and ankles, slight swelling in the jaw area, and tenderness in the rib area considered de minimis); Norman v. Taylor, 25 F.3d at 1261 (persistent thumb pain considered de minimis); Marshall v. Odom, 156 F. Supp. 2d 525, 530 (D. Md. 2001) (headache, facial abrasion, numbness, and swelling considered de minimis). Although an inmate who suffers de minimus injuries may still recover if "extraordinary circumstances"[2] are present, Norman 25 F.3d at 1263, the court concludes that such circumstances do not exist in this case. See Taylor, 155 F.3d at

---

[2] Extraordinary circumstances exist when the force used is "diabolic," "inhuman," or "repugnant to the conscience of mankind." Norman, 25 F.3d at 1263 (quoting Hudson, 503 U.S. at 8).

7

485, n. 9 (concluding that the defendants' use of force "was not so 'diabolic' or 'inhuman' as to render the force unconstitutional regardless of injury," where the defendants allegedly jabbed a kubaton into the plaintiff's nose and mouth approximately eight to ten times after the plaintiff adhered to the defendants' orders) (internal citations omitted). Accordingly the court agrees with the magistrate judge that the defendants are entitled to summary judgment with respect to the plaintiff's excessive force claim.

## 2. Plaintiff's Deliberate Indifference Claim

The plaintiff alleges that after he was sprayed with pepper spray, defendants Trees and Lopez were deliberately indifferent to his medical needs. The magistrate judge has recommended granting the defendants' motion for summary judgment with respect to this claim, since the plaintiff was examined by a registered nurse, and since the plaintiff did not suffer from a sufficiently serious medical injury. The plaintiff has objected to the magistrate judge's recommendation. The plaintiff contends that the registered nurse did not document his injuries because she risked being fired. Based on the plaintiff's objection, his excessive force claim must also be reviewed de novo. See 28 U.S.C. § 636(b)(1)(B).

It is well settled that a prison official may violate an inmate's Eighth Amendment right to be free from cruel and unusual punishment, if the official shows a deliberate indifference to the inmate's serious illness or injury. Estelle v. Gamble, 429 U.S. 97, 102 (1976). As the magistrate judge explains in his report, the test for deliberate indifference involves both an objective and a subjective component. The alleged deprivation must be, objectively, "sufficiently serious," and the prison official must know of and disregard an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 834-837 (1994).

8

Upon reviewing the record in this case, the court agrees with the magistrate judge that there is no evidence that Trees and Lopez were deliberately indifferent to the plaintiff's medical needs, or that the alleged deprivation was sufficiently serious. Once the plaintiff was placed in the special housing unit, prison medical services were notified that pepper spray had been used on the plaintiff. The plaintiff acknowledges that he was subsequently evaluated by a registered nurse, and that the nurse flushed out his eyes. Although the plaintiff contends that he suffered knots and bruises, which were not documented by the registered nurse, there is no evidence that these alleged injuries were sufficiently serious as to require medical treatment, or that the failure to provide treatment resulted in a substantial injury. For these reasons, the court agrees with the magistrate judge that the defendants are entitled to summary judgment with respect to the plaintiff's deliberate indifference claim.

3. Plaintiff's Remaining Claims

The magistrate judge has also recommended granting the defendants' motion for summary judgment with respect to the plaintiff's remaining claims. The plaintiff's response includes no specific objections as to those portions of the magistrate judge's report. Therefore, the court will adopt the Report and Recommendation of the magistrate judge and grant the defendants' motion for summary judgment as to the plaintiff's remaining claims. See Wells v. Shriners Hospital, 109 F.3d 198, 199 (4th Cir. 1997) (failure to file written objections to the Report and Recommendation constitutes a waiver of the right to further contest those issues).

## CONCLUSION

For the reasons stated, the court will adopt the magistrate judge's Report and Recommendation in its entirety. Summary judgment shall be entered in favor of the defendants.

The Clerk is directed to send certified copies of this opinion and the accompanying order to the plaintiff and counsel of record for the defendants.

ENTER: This 12th day of September, 2005.

/s/ Jack Conrad
United States District Judge